UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALEXANDER GUERRERO, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 4:24-cv-00057-SRC |
| v. | ) ) ) |
| HENKEL CORPORATION et al., | ) ) |
| Defendants. | ) ) ) |

**<u>Memorandum and Order</u>**

Disappointed that he bought laundry detergent insufficient to wash 58 full loads of laundry, Alexander Guerrero alleges that Henkel deceived and cheated him.  Guerrero seeks to vindicate his rights and those of his fellow laundry-detergent purchasers whom he claims Henkel also deceived.  Hoping to defend its packaging practices, Henkel moves to dismiss Guerrero's suit.

**I.      Background**

The Court accepts the following well-pleaded facts as true for the purposes of this motion to dismiss.  Defendant Henkel Corporation markets and sells "All" liquid laundry detergent. Doc. 8 at ¶ 1.  Henkel packages this product in an 88-fluid-ounce container.  *Id.*  The front of the container states "58 loads" with a diamond symbol next to "loads" and above "88 FL OZ."  *Id.* at ¶ 2.  The back of the container includes a corresponding diamond next to the message "Contains 58 regular loads as measured just below line 1."  *Id.* at ¶ 10.  Further, the back includes instructions, with a depiction, differentiating between "regular load," "large load," and "HE full load":  (1) for a regular load, "[f]ill just below line 1 (1.5oz)[;]" (2) for a large load, "[f]ill to line

2[;]" and (3) for HE full load, or "[h]eavily soiled loads," "fill to bottom of line 4." *Id.* at ¶ 8. This packaging differs from a competitor's, Suavitel,[1] which states on the container's front, "135 small loads." *Id.* at ¶¶ 56–57.

Plaintiff Alexander Guerrero purchased a container of All at a Walmart Supercenter, believing it contained enough product for "58 full loads of laundry." *Id.* at ¶¶ 84–85.  He purchased the detergent primarily for personal, family, and household use and then used it "properly and according to its instructions in every respect." *Id.* at ¶¶ 86, 88.  After being unable to treat "58 full loads of laundry," Guerrero sued Henkel. *Id.* at ¶ 93.  Specifically, Guerrero sues Henkel for (1) breach of warranty, (2) breach of implied contract, (3) unjust enrichment, and (4) violations of the Missouri Merchandising Practices Act and other consumer-protection laws. *Id.* at ¶¶ 97–138.

As support for his arguments, Guerrero cites to multiple articles discussing laundry use. First, the United States Department of Energy conducted an energy-conservation study, and it based its calculations on "full capacity, large loads of wash." *Id.* at ¶ 46 & n.5 (quoting Darius Sabaliunas et al., *Residential Energy Use and Potential Conservation Through Reduced Laundering Temperatures in the United States and Canada*, 2 Integrated Env't Assessment & Mgmt. 142, 143 (2006), https://setac.onlinelibrary.wiley.com/doi/full/10.1002/ieam.5630020206).  Further, "[u]npublished data from Procter & Gamble indicates that North American households prefer large size loads (43%) over very large or medium loads (21% each)." *Id.* (quoting Sabaliunas et

---

[1] Guerrero refers to this fabric softener as "Sauvitel," *see* doc. 8 at ¶¶ 56–57, 60, but the image of the container spells it "Suavitel," *see id.* at ¶ 56.  Guerrero's counsel repeats this same typographical error in similar cases that the Court today likewise dismisses for failure to state a claim.  Complaint at ¶¶ 58–59, 62, *Boren v. Henkel Corp.*, No. 4:23-cv-01605-SRC (E.D. Mo. Dec. 14, 2023); Complaint at ¶¶ 64–65, 68, *Fellin v. Henkel Corp.*, No. 4:24-cv-00049-SRC (E.D. Mo. Jan. 9, 2024).

2

al., *supra*, at 144); *see also id.* at ¶ 47 & n.6 (citing Jay S. Golden et al*., Energy and Carbon Impact from Residential Laundry Use in the United States*, 7 J. Integrative Env't Scis. 53, 60 (2010), https://www.tandfonline.com/doi/full/10.1080/19438150903541873).  Meanwhile, "small and very small loads" constitute "less than 10% of total washes."  *Id.* at ¶ 46 (quoting Sabaliunas et al., *supra*, at 144).

Second, in "Uniform Test Method for Measuring the Energy Consumption of Automatic and Semi-automatic Clothes Washers," the DOE instructed on clothes-container-capacity determinations:  "measur[e] the ***entire volume that a clothes load could occupy within the clothes container*** during [washing process]."  *Id.* at ¶ 48 (first alteration added) (quoting 10 CFR Appendix J2 to Subpart B of Part 430).  Third, the DOE recommends consumers "wash full loads" to "save energy."  *Id.* at ¶ 49 & n.8 (quoting Scott Minos, *16 Ways to Save Money in the Laundry Room*, DOE, https://www.energy.gov/energysaver/articles/16-ways-save-money-laundry-room [https://perma.cc/BTU7-ELUT] (last accessed May 28, 2024)).

Fourth, "CNN surveyed laundry and environmental experts, who recommend that Americans 'save up [their] dirty clothes and wash them in a few big loads versus several smaller loads' to mitigate the environmental impact."  *Id.* at ¶ 51 (alteration in original) (quoting Leah Kirts, *How to Wash Laundry Sustainably, According to Experts*, CNN (Aug. 23, 2022, 9:21 AM), https://www.cnn.com/cnn-underscored/home/how-to-wash-laundry-sustainably).  Finally, "[a]ccording to a nationwide survey conducted in 2017, 'four out of five consumers intentionally overload their washing machine.'"  *Id.* at ¶ 54 & n.12 (quoting *New Survey Reveals U.S. Consumers Will Do Almost Anything to Avoid Doing a Second Load of Laundr*y, PR Newswire (June 27, 2017, 9:13 AM), https://www.prnewswire.com/news-releases/new-survey-reveals-us-consumers-will-do-almost-anything-to-avoid-doing-a-second-load-of-laundry-

300480341.html#:~:text=Additionally%2C%20out%20of%20the%20more,a%20second%20load%20of%20laundry [https://perma.cc/N2QA-7R6J]).

After Guerrero filed this action in state court, Henkel removed to this Court.  Doc. 1.  Now, Henkel moves to dismiss Guerrero's complaint.  Doc. 18.

**II.      Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).  Ordinarily, the Court considers only the facts alleged in the complaint when ruling on a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff."  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal

theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*. This "context-specific task" requires the Court to "draw on its judicial experience and common sense." *Id*. In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Id.* at 682; *Twombly*, 550 U.S. at 567. The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Iqbal*, 556 U.S. at 682. The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id.* at 679. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

5

**III.    Discussion**

   **A.    MMPA claim**

Guerrero's chief claim against Henkel concerns the MMPA.  The MMPA gives consumers a private right of action to recover damages from sellers:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.

Mo. Rev. Stat. § 407.025.1(1).  In turn, section 407.020 of the MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade."  Mo. Rev. Stat. § 407.020.1(1).  So, to state a claim under the MMPA, Guerrero must show that he "(1) purchased merchandise from [Henkel]; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under [section 407.020]."  *Tucker v. Gen. Motors LLC*, 58 F.4th 392, 396–97 (8th Cir. 2023) (quoting *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022)).

Further, the Missouri Legislature amended the MMPA in 2020, altering MMPA claims in two substantial ways.  First, the legislature placed more stringent requirements on plaintiffs:

> A person seeking to recover damages shall establish:
>
> (a) That the person acted as a reasonable consumer would in light of all circumstances;
>
> (b) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and
>
> (c) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

6

Mo. Rev. Stat. § 407.025.1(2); *see also Bell v. Annie's, Inc.*, 673 F. Supp. 3d 993, 998 (E.D. Mo. 2023) (requiring plaintiff to establish the three added elements from 2020 amendments); *Abbott v. Golden Grain Co.*, 677 F. Supp. 3d 940, 947 (E.D. Mo. 2023) ("[T]he Court holds that § 407.025.1(2) adds three elements to the original four set by the pre-amendment MMPA."); *Dedloff v. Whole Foods Mkt. Grp., Inc.*, No. 4:22-cv-01340-AGF, 2023 WL 5428501, at *5 (E.D. Mo. Aug. 23, 2023) ("The 2020 amendments to § 407.025.1(2) added three elements . . . ."). Second, the legislature empowered courts to dismiss as a matter of law cases that previously may have made it past the motion-to-dismiss stage: "A court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer." Mo. Rev. Stat. § 407.025.1.

Henkel attacks Guerrero's MMPA claim on multiple grounds. *See* doc. 19 at 10–18.[2] The Court addresses two arguments: (1) Guerrero "alleges no plausible misrepresentation," *id.* at 10; and (2) Guerrero can establish neither "that he acted as a reasonable consumer would in light of all of the circumstances, or . . . that the method, act, or practice would cause a reasonable person to enter into the transaction that resulted in damages," *id.* at 17 (citing Mo. Rev. Stat. § 407.025.1(2)(a)–(b)). The Court agrees with both arguments.

### 1.  Guerrero fails to plausibly allege misrepresentation or deception.

First, Guerrero must plausibly allege that Henkel committed "an act declared unlawful under the [MMPA]," *Tucker*, 58 F.4th at 396–97 (alteration in original) (citation omitted), such as deception, fraud, or misrepresentation, Mo. Rev. Stat. § 407.020.1. (The 2020 amendments did not alter this subsection; thus, this requirement applied pre-amendment and still applies post-

---

[2] The Court cites to page numbers as assigned by CM/ECF.

amendment.)  As a pre-amendment case noted, the MMPA does not define "unfair" or "deceptive practices."  *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724 (Mo. 2009) (citation omitted).  And the amendments did not add any definitions.  Instead, the MMPA continues to "leave[] to the court in each particular instance the determination whether fair dealing has been violated."  *Id.* (citation omitted).  With this, "[w]hen there is 'no evidence of a course of conduct . . . that would amount to fraud or deception,' MMPA complaints can be dismissed."  *Schulte v. Conopco, Inc.*, 997 F.3d 823, 826 (8th Cir. 2021) (alteration in original) (quoting *Kiechle v. Drago*, 694 S.W.2d 292, 294 (Mo. Ct. App. 1985)).

Guerrero alleges that "the front-side '58 loads' claim is false."  Doc. 8 at ¶ 4; *see also id.* at ¶¶ 5, 9.  Further, Guerrero alleges that "[r]epresenting that the Product can provide detergent for '58 LOADS,' is misleading and deceptive."  *Id.* at ¶ 20.  Yet, Guerrero fails to allege that the container lacked enough detergent for 58 "regular loads" as described in the container's instructions.  *See generally* doc. 8.  Instead, Guerrero alleges that Henkel cheats consumers "out of at least 50% of what they expect."  *Id.* at ¶ 17.  Into this allegation, Guerrero embeds a multi-step argument:

> Premise 1:  The front label promises enough detergent for 58 loads.
> Premise 2:  A "load" means a "full load."
> Premise 3:  As revealed on the back, the container lacks detergent for 58 full loads.
> Conclusion:  The front label is false, misleading, and deceptive.

*See id.* at ¶¶ 12, 17–19, 45.  The Court accepts premise 3 as a well-pleaded factual allegation.  But the Court rejects premise 1 as incomplete.  Premise 1 fails to address the diamond on the front label, connecting the front to the back and defining "loads."  Further, the Court rejects premise 2 as an unsupported and unreasonable conclusion.  Premise 2 relies on two interrelated propositions:  (1) a "load" of laundry is a unit of measurement akin to "meters, liters, grams, feet,

8

ounces, and pounds," and (2) a consumer understands "load" to be a "full load."  Doc. 8 at ¶ 45.  The Court addresses each proposition in turn.

The Court rejects the first proposition as an unsupported conclusion.  *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("[W]hen considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990))).  Guerrero's conclusion contradicts both common sense and the articles he presents as support.

The dictionary defines "load" as "an item or collection of things, material, animals, or passengers carried."  *Load*, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/load (last accessed May 28, 2024).  Unlike meters, liters, grams, feet, ounces, and pounds, "load" is an indeterminate quantity.  *See, e.g.*, *Meter*, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/meter (last accessed May 28, 2024) ("the basic metric unit of length that is equal to the distance between two lines on a platinum-iridium bar kept at the International Bureau of Weights and Measures near Paris, is approximately equal to 39.37 inches, and is equal to 1,650,763.73 wavelengths of the orange-red light of excited krypton of mass number 86").  And as an indeterminate quantity, various sizes of "load" exist: small, medium, large, and even variants of those indeterminate qualifiers.  *See, e.g.*, Sabaliunas et al., *supra*, at 144 (referring to "very small," "small," "medium," "large," and "very large" loads).  But the same does not apply to determinate quantities; small, medium, and large meters do not exist.  Unlike determinate quantities, "load" does not equate to a set weight or composition—and Guerrero alleges no such set weight or composition.

9

Additionally, none of the articles Guerrero cites defines "load" as a determinate unit of measurement. Rather, all refer to different sizes of loads. *See id.* at 142 ("Other consumer choices that impact water and energy use during laundering include . . . the size of each load of laundry . . . ."); *id.* at 143 ("[T]here are considerable differences among appliances in partial load selections and varying volumes of water associated with each load size."); *id.* at 144 (referring to "very small," "small," "medium," "large," and "very large" loads); 10 CFR Appendix J2 to Subpart B of Part 430 (providing a table with "Minimum load," "Maximum load," and "Average load" with varying weights associated with each); Minos, *supra* ("Wash full loads.  Your washer will use about the same amount of energy no matter the size of the load, so fill it up."); Kirts, *supra* (differentiating between "big loads" and "smaller loads"); PR Newswire, *supra* (referring to "small laundry loads," "lighter loads," and "small custom-care loads").

As shown in the articles, a "load" varies in size—and it varies by the type of wash (colors, whites, bedding, delicates, etc.), by the size of the machine, by the soil level, and other factors. *See, e.g.*, Golden et al., *supra*, at 56 ("The main characteristics that define the consumer washing phase are:  average load size, composition of the load, consumer pre-treating, machine temperature selection, type of cloth being washed, bleach usage, washes per week, and the use of fabric softener."). Because of this, the Court rejects Guerrero's proposition that a load of laundry is a determinate unit of measurement. *Cf. Amalgamated Meat Cutters & Butchers Workmen of N. Am., Loc. Union No. 576 v. Wetterau Foods, Inc.*, 597 F.2d 133, 135 (8th Cir. 1979) ("The fallacy of this thesis is blatant.").

The Court rejects the second proposition—a consumer understands "load" to be a "full load"—as an unreasonable inference or deduction of fact.  "In testing the legal sufficiency of the complaint[,] the well-pleaded allegations are taken as admitted but conclusions of law and

10

unreasonable inferences or unwarranted deductions of fact are not admitted." *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir. 1968) (citation omitted).  Similarly, the Court does not assume as true an "unreasonable characterization of the facts." *Amalgamated Meat Cutters*, 597 F.2d at 135.  Just as none of Guerrero's sources defines "load" as a determinate unit of measurement, none explicitly asserts that consumers understand "load" to be a "full load."  Thus, Guerrero must infer his conclusion.  But again, because all the articles refer to various sizes of loads, the Court finds it unreasonable to infer that consumers understand "load" to be a "full load."  The articles tend to show the opposite.  *Cf. Perry v. Manna Pro Prod., LLC*, No. 4:22-cv-00127-AGF, 2022 WL 3585611, at *4 (E.D. Mo. Aug. 22, 2022) ("[N]othing in the conclusions of the publications cited by Plaintiff can be plausibly said to directly address or contradict [the defendant's alleged] representations.").

Further, the government recommendation of and consumer preference for full-capacity loads do not change this determination.  *See* doc. 20 at 12–15.  In fact, the recommendation and preference imply the existence of other options—of variation.  Nor does a competitor's use of "small loads" on its front label change this determination.  *See* doc. 8 at ¶¶ 55–57.  Rather, it too confirms the indeterminacy of "load."

Overall, the Court rejects Guerrero's conclusion that "load" means a "full load" as unsupported and unreasonable.  The Court finds Guerrero's allegation of falsity and deception implausible.  Thus, Guerrero fails to sufficiently allege Henkel committed an act declared unlawful under the MMPA.

        **2.**     **Guerrero fails to plead the first two post-amendment elements.**

For similar reasons, Guerrero cannot satisfy the first two post-amendment elements: (1) that he acted as a reasonable consumer would in light of all circumstances and (2) that the

11

method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages.  Mo. Rev. Stat. § 407.025.1(2)(a)–(b). Because Guerrero does not state any special circumstances separating him from the average consumer, the issue of Guerrero's reasonableness in light of all circumstances and the issue of what a reasonable consumer would do present essentially the same question.  So, the Court addresses these issues together.

"A court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."  Mo. Rev. Stat. § 407.025.  "The relevant inquiry under the MMPA is whether the product packaging's 'overall appearance' is deceiving."  *Muller v. Blue Diamond Growers*, No. 683 F. Supp. 3d 933, 942 (E.D. Mo. 2023) (quoting *Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965, 972 (W.D. Mo. 2021)).  Accordingly, both Missouri law and the MMPA itself recognize "that reasonable consumers read product labels and packaging."  *Bell*, 673 F. Supp. 3d at 999; *see also Dedloff*, 2023 WL 5428501 at *6.  With this, a "package's several other disclosures" may resolve an "ambiguity about the package's contents."  *Abbott*, 677 F. Supp. 3d at 950.

Here, the packaging discloses information on both the front and back.  The front of the container states "58 loads" with a diamond symbol next to "loads" and above "88 FL OZ."  Doc. 8 at ¶ 2.  Then the back of the container includes a corresponding diamond next to the message "Contains 58 regular loads as measured just below line 1."  *Id.* at ¶ 10.  Further, the back includes instructions, with a depiction, differentiating between "regular load," "large load," and "HE full load":  (1) for a regular load, "[f]ill just below line 1 (1.5oz)[;]" (2) for a large load, "[f]ill to line 2[;]" and (3) for HE full load, or "[h]eavily soiled loads," "fill to bottom of line 4."

*Id.* at ¶ 12. Taken as a whole, the container claims to provide 88-fluid ounces of detergent sufficient for 58 "regular" loads of laundry, which is smaller than a "large" load and "full" load.

Despite these disclosures, Guerrero, relying mainly on two factors, argues that the packaging deceives a reasonable consumer. For the first factor, Guerrero argues—as he does above—that a reasonable consumer understands "load" to mean "full load." Doc. 20 at 12–15; *see also id.* at 12 ("From the outset, consumers understand the term 'loads' in the laundry context as referring to full units, not half-units, similar to consumers' understanding of other units of measurement, such as meters, liters, grams, feet, ounces and pounds. . . . This is a common-sense conclusion . . . ." (citation and emphasis omitted)). But as discussed above, the Court rejects this proposition as an unreasonable conclusion. By definition and according to Guerrero's own authorities, "load" is indeterminate. It varies based on numerous factors. *See, e.g.*, Golden et al., *supra*, at 56 ("The main characteristics that define the consumer washing phase are: average load size, composition of the load, consumer pre-treating, machine temperature selection, type of cloth being washed, bleach usage, washes per week, and the use of fabric softener.").

Here, the packaging addresses the indeterminacy. *See Muller*, 683 F. Supp. 3d at 942 ("The relevant inquiry under the MMPA is whether the product packaging's 'overall appearance' is deceiving." (quoting *Browning*, 539 F. Supp. 3d at 972)). The front label includes a diamond next to "58 loads," doc. 8 at ¶ 2; the back label includes both a corresponding diamond, defining the "58 loads" as "regular loads," and a depiction differentiating between "regular" loads, "large" loads, and "full" loads, *id.* at ¶¶ 10–12. Overall, the packaging explains "58 loads" and dispels the belief that "58 loads" equal "58 full loads." To reach Guerrero's proposed conclusion, the Court would have to ignore the innate indeterminacy of the term "load," ignore

13

the diamond on the front label, and ignore the back label entirely.  But the Court cannot do so.  The Court must consider both the packaging's overall appearance and "that reasonable consumers read product labels and packaging." *Bell*, 673 F. Supp. 3d at 999.  With these considerations, the Court finds Guerrero's claim fails to show a likelihood that Henkel's packaging "would mislead a reasonable consumer." Mo. Rev. Stat. § 407.025.1; *cf. Song v. Champion Petfoods USA, Inc.*, 27 F.4th 1339, 1343 (8th Cir. 2022) (applying Minnesota substantive law, which requires that the "packaging could deceive a reasonable consumer," and concluding that "[i]t's well settled that a label is not deceptive as a matter of law when the plaintiff's interpretation is so facially illogical, implausible, or fanciful that no reasonable consumer would think it—and that dismissal is warranted in those circumstances." (citations omitted)).  Notably, Guerrero cites *Song*, but to no avail.  *See* doc. 20 at 10, 16 (citing *Song*, 27 F.4th at 1345 n.7).

Further, even assuming that Henkel's front label assertion of "58 loads" presents an ambiguity, the Court finds that the overall packaging resolves it.  In two other district courts, plaintiffs alleged deception due to a laundry product's front-label use of "loads," and in both, the court found the plaintiff's reading of the label to be unreasonable and dismissed the claims.  *See Pridgen v. Church & Dwight Co.*, No. SA CV 19-1683-DOC-JDE, 2020 WL 2510517, at *1, 4 (C.D. Cal. Mar. 2, 2020) (analyzing "loads" on an OxiClean container's front label); *Adeghe v. Procter & Gamble Co.*, No. 22-CV-10025 (CS), 2024 WL 22061, at *1, 5 (S.D.N.Y. Jan. 2, 2024) (analyzing "loads" on a Tide bottle's front label).  In *Pridgen*, the court found that instructions on the back help consumers understand a front label.  2020 WL 2510517 at *3–4.  The court in *Adeghe* found similarly and addressed a load-equals-full-load argument:

> [G]iven that washing machines vary in their capacity and people vary in their needs and preferences, it is not plausible that [the plaintiff] would see the word "load" on

> the Product and assume that the manufacturer meant "the amount of laundry that fills my machine." At most (and whether or not [the plaintiff] saw the diamond) [the plaintiff] would think, "I wonder what they mean by 'load'"—a question that is answered by the back label.

2024 WL 22061 at *4.

Neither of these cases address the MMPA. *See Pridgen*, 2020 WL 251057 at *2–3 (addressing California consumer-protection statutes); *Adeghe*, 2024 WL 22061 at *3 (addressing the New York General Business Law, §§ 349–50). But, like the amended MMPA, both legal regimes require plaintiffs to satisfy a reasonable-consumer test. *Pridgen*, 2020 WL 2510517 at *3 ("'[C]laims under the California consumer protection statutes are governed by the "reasonable consumer" test,' which requires a showing 'that "members of the public are likely to be deceived."'" (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016))); *Adeghe*, 2024 WL 22061 at *3 ("New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading: whether the alleged act is likely to mislead a reasonable consumer acting reasonably under the circumstances." (citation omitted)); *see also Bell*, 673 F. Supp. 3d at 1001 ("[The New York] standard is in accord with the MMPA as amended . . . .").

Considering that California law, New York law, and the MMPA all contain similar reasonable-consumer tests, the Court finds these cases persuasive. Like *Pridgen* and *Adeghe*, the instructions on the back label here help the consumer understand the word "load" on the front. And like *Adeghe*, the Court rejects Guerrero's contention that reasonable consumers equate "load" with "full load." *See also Bonsack v. Target Corp.*, No. 23SL-CC04515 (Mo. Cir. Ct. May 20, 2024) (analyzing "loads" on a laundry product and finding that "the 'overall appearance' of the packaging in the Plaintiff's Petition is not deceptive").

Additionally, the Court rejects Guerrero's argument that "this case is not like *Adeghe*." Doc. 20 at 15 n.15.  Not only do the cases share similar facts, but the complaints share similar arguments, citations, and even sentences.  *Compare* doc. 8 at ¶ 45 ("Consumers understand the terms 'loads' in the laundry context as referring to *full* units, not half-units, similar to consumers' understanding of other units of measurement, such as meters, liters, grams, feet, ounces, and pounds."), *with* Complaint at ¶ 5, *Adeghe*, No. 7:22-cv-10025-CS ("Consumers understand 'loads' in the context of laundry to refer to full units, in the same way as other metric and imperial units of measurement, such as meters, liters, grams, feet, ounces and pounds."); *compare* doc. 8 at ¶ 46 ("This same understanding recently was confirmed by the United States Department of Energy . . . .  '[U]npublished data from Procter & Gamble indicates that North American households prefer large size loads (43%) over very large or medium loads (21% each).'" (quoting Sabaliunas et al., *supra*)), *with* Complaint at ¶¶ 6, 8, *Adeghe*, No. 7:22-cv-10025-CS ("This understanding was confirmed by the Department of Energy . . . . '[U]npublished data from Procter & Gamble [which] indicate that North American households prefer large size loads (43%) over very large or medium loads (21% each).'" (alterations in original) (quoting Sabaliunas et al., *supra*, at 142–53)); *compare* doc. 8 at ¶ 47 n.6 (citing Golden et al., *supra*), *with* Complaint at ¶ 8 n.1, *Adeghe*, No. 7:22-cv-10025-CS (citing Golden et al., *supra*); *compare* doc. 8 at ¶ 51 ("CNN surveyed laundry and environmental experts, who recommend that Americans 'save up [their] dirty clothes and wash them in a few big loads versus several smaller loads' to mitigate the environmental impact." (alteration in original) (quoting Kirts, *supra*)), *with* Complaint at ¶ 14, *Adeghe*, No. 7:22-cv-10025-CS ("CNN surveyed laundry and environmental experts, who recommended that Americans 'save up [their] dirty clothes and wash them in a few big loads versus several smaller loads' to mitigate the

environmental impact." (alteration in original) (quoting Kirts, *supra*)).  The Court finds that these similarities are not an unlikely coincidence.

For the second factor, Guerrero argues that because consumers make purchases "on-the-fly" and "in a manner of seconds," consumers lack the time to read the instructions on the back.  Doc. 20 at 9; *see* doc. 8 at ¶ 42.  Even if true, this contention does not close the logical gap between reading "58 loads" and expecting "58 full loads."  And without any support, Guerrero argues that the front-label disclosure of 88-fluid ounces is meaningless to consumers:  "While a consumer might understand off-hand what it means to cook or ingest 'x' ounces of a particular product, a consumer has no similar understanding as to how many loads of laundry 'x' ounces will provide for."  Doc. 20 at 8 n.8.  Overall, the Court rejects these arguments as conclusory allegations.  *See Bell*, 673 F. Supp. 3d at 999 (rejecting as conclusory the allegation that "the average consumer spends a mere 13 seconds making an in-store purchasing decision").

Finding that Guerrero fails to plausibly allege misrepresentation or deception and fails to plead the first two post-amendment elements, the Court dismisses Guerrero's MMPA claim with prejudice.  Because the Court dismisses this claim, the Court need not address Guerrero's arguments for class-wide standing.  *See* doc. 20 at 18.

**B.     Breach-of-warranty and breach-of-implied-contract claims**

Both the breach-of-warranty claim and breach-of-implied-contract claim rely on the rejected proposition that Henkel falsely promised enough detergent for 58 full loads of laundry.  *See* doc. 20 at 18 ("[A]s to Plaintiff's Breach of Warranty, Implied Contract, and Unjust Enrichment claims, Defendant generally attacks each for the same reasons that Defendant attacks the MMPA claim.  Thus, for all the aforementioned reasons that Plaintiff's MMPA claims withstand dismissal, so too do those other claims." (citation omitted)).  For the breach-of-

17

warranty claim, Guerrero asserts, "Defendant made promises and representations in an express warranty provided to all consumers, namely the False Claims. . . . The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member."  Doc. 8 at ¶¶ 99–100; *see also id.* at ¶ 68 (defining "False Claims" as "the containers on the front packaging of all of the Products has borne one or more uniformly-worded labels falsely claiming the Product provides enough detergent for '58 LOADS'").  For the breach-of-implied-contract claim, Guerrero asserts, "despite claiming to provide enough detergent for '58 Loads,' Plaintiff was unable to wash anywhere near that amount of loads." *Id.* at ¶ 116.  Because the Court has found that Guerrero failed to plausibly allege a false claim or misrepresentation, the Court dismisses Guerrero's breach-of-warranty and breach-of-implied-contract claims with prejudice.

### C.     Unjust-enrichment claim

Guerrero's claim for unjust enrichment suffers from defects like those that plague his other claims.  "An unjust enrichment claim requires a showing that:  '(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.'" *Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 199 (Mo. 2014) (quoting *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011)).

Guerrero cannot plausibly allege that Henkel retained a benefit under inequitable or unjust circumstances when Guerrero received the 88 ounces of detergent he bargained for.  *See Ringier Am., Inc. v. Land O'Lakes, Inc.*, 106 F.3d 825, 829 (8th Cir. 1997) ("First, LOL was not unjustly enriched—it received printing services as part of the benefit of its bargain with RMA, a bargain LOL did not breach."); *In re Baycol Prods. Litig.*, 596 F.3d 884, 892 (8th Cir. 2010) (citing *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008), for the

proposition that "[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected," and concluding that, because the plaintiff "received the benefit of his bargain," his unjust-enrichment claim failed).  The Court accordingly dismisses Guerrero's unjust-enrichment claim with prejudice.

## IV.     Conclusion

Accordingly, the Court grants Henkel's [18] Motion to Dismiss.  A separate order of dismissal accompanies this Memorandum and Order.

So ordered this 30th day of May 2024.

_SL R. Cl_
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE